Raymond J. DONOVAN,* Secretary of Labor, United States Department of Labor, Plaintiff-Appellee,

and

Marvin A. Kaylor and Joseph J. Jelincic, Plaintiffs in Intervention/Appellees,

v.

LOCAL UNION 70, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN, AND HELPERS OF AMERICA, Defendant-Appellant.

Nos. 79–4718, 80–4208.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 11, 1981.

Decided Nov. 20, 1981.

---

* We substitute the name Raymond J. Donovan, Secretary of Labor, as the successor to the original appellant, Ray Marshall, the former Secretary of the United States Department of Labor, per Fed.R.App.P. 43.

Duane B. Beeson, Beeson, Tayer, Kovach & Silbert, San Francisco, Cal., for Local No. 70.

Karen Handorf, Washington, D. C., argued, for plaintiff-appellee; Daniel W. Teehan, Regional Sol., San Francisco, Cal., on brief.

Daniel M. Siegel, Siegel, Meyers, Taub, Siegel & Friedman, Oakland, Cal., argued, for Marvin A. Kaylor; Marcia Meyers, Oakland, Cal., on brief.

Before KILKENNY and SNEED, Circuit Judges, and PANNER **, District Judge.

SNEED, Circuit Judge:

Local 70, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Union), appeals from two orders of the district court. The first is in favor of the Secretary of Labor (Secretary) and requires a new union presidential election to be held because of a violation of Section 401(g) of the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 481(g).[1] The second order appealed is in favor of the Plaintiff in Intervention, Kaylor (Intervenor), and awards the Intervenor attorney fees in the amount of $1,500. The Secretary also contests the latter order. We affirm both orders.

---

** Honorable Owen W. Panner, United States District Judge for the District of Oregon, sitting by designation.

1. 29 U.S.C. 481(g) provides:

No moneys received by any labor organization by way of dues, assessment, or similar levy, and no moneys of an employer shall be contributed or applied to promote the candidacy of any person in an election subject to the provisions of this subchapter. Such moneys of a labor organization may be utilized for notices, factual statements of issues not involving candidates, and other expenses necessary for the holding of an election.

## I.

### FACTS

The Union held its regular election for union officers by walk-in secret ballot at its headquarters on December 9 and 10, 1977. One day prior to the election the Union's shop steward employed at Baldwin Trucking Company (Baldwin) hauled two trailers to sites adjacent to union headquarters and, in conjunction with several incumbent officers and their supporters, posted campaign signs in support of incumbent candidates all over the trailer's walls.

One of the trailers belonged to D & G Leasing Company, a subsidiary of Baldwin. Baldwin employs members of the Union and is a party to a collective bargaining agreement with the Union. Neither Baldwin nor the candidates were found to have knowledge of the activities of the shop steward in using his employer's trailers for campaign purposes. Baldwin was not paid for the use of its equipment.

Marvin Kaylor and Joseph Jelincic, unsuccessful candidates for the posts of Union President and Vice-President, after exhausting their internal remedies, as required by the LMRDA, filed a timely complaint with the Secretary. The Secretary, finding probable cause to believe a violation of Title IV of the LMRDA § 401(g), 29 U.S.C. § 481(g) had occurred, filed a complaint against the Union. The unsuccessful candidates were granted leave to intervene.

The district court, finding a violation had occurred, declared the presidential election null and void and promulgated the orders with respect to which this appeal has been taken.

## II.

### ANALYSIS

A.  *Was there a violation of LMRDA § 401(g)?*

The first issue raised on appeal is whether the uncompensated use of the employer's trailer as a billboard for campaign posters in a union election, absent the employer's knowledge or intent, is a violation of LMRDA § 401(g), 29 U.S.C. § 481(g). It is such a violation if the use is a contribution or application of moneys of an employer to promote the candidacy of a person in a union election.

The Union contends the use of the trailer was at most a technical violation and that the trial court's ordering of a new election was inconsistent with the intent of Congress. The pervasive theme of the LMRDA, the Union argues, was the concern of Congress with corruption, dictatorial practices and racketeering in the labor and management fields. *See Wirtz v. Hotel Employees, Local 6,* 391 U.S. 492, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968). Inasmuch as the alleged violation did not fall within those categories, it cannot be a violation of LMRDA.

■ We disagree. We believe Congress had additional goals in enacting LMRDA. It enacted the LMRDA to remedy labor and management practices that harmed employees. Among the problems discovered through investigations into those fields by Congress was that of cooperation between some employers and some labor officials which operated to the detriment of employees. See H.R.Rep. No. 741, 86th Cong., 1st Sess. 6–7 *reprinted in* [1959] U.S.Code Cong. & Ad.News 2424, 2428–29; S.Rep. No. 187, 86th Cong., 1st Sess. 5–7 (1959) *reprinted in* [1959] U.S.Code Cong. & Ad.News 2318, 2322–24. Congress intended to protect the rights and interests of employees and to further the public interest by insuring that employers, labor organizations and their respective representatives "adhere to the highest standards of responsibility and ethical conduct...." 29 U.S.C. § 401(a).

Concern about the integrity of union elections is consistent with this intention. The Supreme Court has stated "Title IV's special function in furthering the overall goals of the LMRDA is to insure 'free and democratic' elections." *Wirtz v. Local 153, Glass Bottle Blowers Ass'n,* 389 U.S. 463, 470, 88 S.Ct. 643, 647, 19 L.Ed.2d 705 (1968) (footnote omitted). The individual union member is bound by the union contract and may

not lawfully negotiate with his employer. The government in granting unions the power to negotiate members' wages, hours and conditions of employment should insure that the officials of the unions are responsive to the desires of those members they represent. "Free and democratic" elections are the means by which this end is served.

To advance that end, we adopt the approach employed in *Marshall v. Local Union 20, Int'l Bhd. of Teamsters*, 611 F.2d 645 (6th Cir. 1979). That court, in holding that contributions may not be received from any employer, even one not directly affected by the union election, stated:

> The purpose of Title IV of the Act is to prevent
>
> the subjugation of the employees' representative's interest to those of management. Even the most subtle of influences can produce serious consequences for the loyalty and integrity with which the union should represent its membership. We must construe the language of 29 U.S.C. § 481(g) to comport with its underlying purpose 'to prevent, discourage, and make unprofitable, improper conduct on the part of union officials, employers, and their representatives.' S.Rep.No. 187, 86th Cong., 1st Sess., *reprinted in* (1959) U.S.Code Cong. & Admin. News pp. 2318, 2321.

611 F.2d at 651.

This approach is consistent with the plain and unambiguous language of LMRDA § 401(g). This court in the past has construed this provision in a manner consistent with its plain meaning.[2] To require a showing of employer knowledge of the contribution of moneys would impair the effectiveness of section 401(g). Collusion between employer and union officials could render it useless and frustrate its purpose. We decline to create an additional statutory element which could have this effect.

■ The fact that walls of trailers are a benefit in kind does not render the statute inoperative. "Moneys," as used within § 401(g), has been interpreted as anything of value, whether the expenditure be direct or indirect. *See* 29 C.F.R. § 452.78. This is a reasonable interpretation. Moreover, the trial court, in ruling the walls of the trailers had value, was not clearly erroneous.

**B. Did the violation of LMRDA § 401(g) affect the election outcome?**

The Union next argues that the use of the trailer, even if a § 401(g) violation, did not affect the election outcome. Under LMRDA § 402(c)(2), 29 U.S.C. § 482(c)(2) a district court may only declare a union election null and void and order a new election if, upon a preponderance of the evidence, after a trial on the merits, the court finds that the violation of section 401(g) of the LMRDA, 29 U.S.C. § 481(g) *may have affected the outcome.*

■ The Supreme Court in *Wirtz v. Hotel Employees, supra*, established that once a violation of the Act has been proven, a *prima facie* case that the violation may have affected the outcome has been made. 391 U.S. at 506–7, 88 S.Ct. at 1751–2. The presumption may be rebutted by introducing tangible evidence "which supports a finding that the violation did not affect the result." *Wirtz v. Hotel Employees, supra*, 391 U.S. at 507, 88 S.Ct. at 1752. In this case no such evidence was produced. Therefore, the trial court, upon reviewing the evidence, found the violation may have affected the election outcome and ordered a new election pursuant to LMRDA § 402(c)(2), 29 U.S.C. § 482(c)(2). This was a proper holding.

**C. Was the award of attorney's fees proper?**

Finally we turn to the trial court's award of attorney's fees to the Intervenor below. Both the Union and Secretary contend the statutory scheme of the LMRDA and the limited authorized role of an intevenor preclude such an award. The Union also contends such an award under the "common

---

**2.** *See Shultz v. Local Union 6799, United Steelworkers of America*, 426 F.2d 969 (9th Cir. 1970) (court rejected de minimus argument where sum contributed was valued at $13.04).

benefit" rule is not proper as the Intervenor did not confer any substantial or independent benefit to the Union members. The Secretary, in addition, suggests that the allowance of attorney fees to intervenors in Title IV actions will create a disincentive to settlement on the part of unions and thus interfere with the effective enforcement of the LMRDA.

[4] Union members, while precluded from bringing individual actions, may intervene in cases against the union instituted by the Secretary on the members request. *Trbovich v. United Mine Workers*, 404 U.S. 528, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972); *accord, Brennan v. Silvergate Dist. Lodge No. 50, Int'l Ass'n of Machinist and Aerospace Workers*, 503 F.2d 800 (9th Cir. 1974). However the member "is limited to the claims of illegality presented by the Secretary's complaint." 404 U.S. at 537, 92 S.Ct. at 635 (footnote omitted). By presenting the claims in an inevitably somewhat different manner the union member frequently can be of valuable assistance to the Secretary.

Private parties, however, are generally prevented from recovering attorney fees in absence of specific Congressional authorization. *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Cantwell v. County of San Mateo*, 631 F.2d 631 (9th Cir. 1980), *cert. denied*, 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981). The "common benefit" exception exists, however. Under it such awards are allowed to a prevailing party if, in the trial court's discretion, it finds that the party has conferred a common benefit on the members of an ascertainable class. *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *Higgins v. Harden*, 644 F.2d 1348 (9th Cir. 1981).

Courts which have addressed the question of attorney fees in Title IV actions have not permitted either the absence of express authorization for such awards or the Secretary's exclusive role in enforcement of Title IV actions to preclude an award of attorneys fees based upon the "common benefit" theory. *See Brennan v. United Steelworkers of America*, 554 F.2d 586 (3d Cir. 1977), *cert. denied*, 435 U.S. 977, 98 S.Ct. 1627, 56 L.Ed.2d 71 (1978); *Usery v. Local Union 639 Int'l Bhd. of Teamsters*, 543 F.2d 369 (D.C.Cir.1976), *cert. denied*, 429 U.S. 1123, 97 S.Ct. 1159, 51 L.Ed.2d 573 (1977); *but see Marshall v. Int'l Bhd. of Teamsters, Local Union No. 20*, 509 F.Supp. 926 (N.D.Ohio 1981).

We prefer, however, to turn our decision on the acknowledgement made by the Secretary's counsel of the "ongoing and vital" assistance provided by the Intervenor in the preparation and course of this litigation. Because of this acknowledgement, and only because of it, we affirm the trial court's award of $1500 in attorney's fees to the plaintiff in intervention. We expressly leave open the question of the award of attorney fees in Title IV actions in the absence of such a declaration by the Secretary.

The modest amount awarded strongly suggests it does not exceed the value of the intervenor's contribution.

Affirmed.