680 F.2d 3
 110 L.R.R.M. (BNA) 2581, 94 Lab.Cas. P 13,556
 Willie BARNES, Plaintiff-Appellant,
v.
Louis SANZO, Amadio Petito and Don Maglione, Jr., jointly
and severally, both in their individual and representative
capacities as President, Secretary and Vice-President,
respectively of Local 29 of the Laborers' International
Union of North America/Blasters, Drillrunners, and Miners
Union and Local 29 of the Laborers' International Union of
North America/Blasters, Drillrunners, and Miners Union,
Defendants-Appellees.
 No. 939, Docket 81-7890.
 United States Court of Appeals,
Second Circuit.
 Argued April 19, 1982.
Decided May 17, 1982.
 
 Burton Hall, New York City (Hall, Clifton & Schwartz, New York City, of counsel), for plaintiff-appellant.
 Dennis Crowley, New York City (Corcoran & Brady, P. C., New York City, of counsel), for defendants-appellees.
 Before WATERMAN, FRIENDLY and MESKILL, Circuit Judges.
 MESKILL, Circuit Judge:
 
 
 1
 Willie Barnes appeals from an order of the United States District Court for the Southern District of New York, Ward, J., dismissing his complaint which challenged the receipt by local 29, Laborers' International Union of North America/Blasters, Drillrunners, and Miners Union ("Union"), of certain dues payments from members. We affirm.
 
 BACKGROUND
 
 2
 In 1972, Union officials increased membership dues by ten cents per hour of employment. Union officials also increased dues by five cents per hour of employment in each of 1975, 1976 and 1977. It is undisputed that because the Union failed to conduct secret ballot votes of the membership, each of the increases violated section 101(a)(3)(A) of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411(a)(3)(A) (1976).
 
 
 3
 On December 31, 1979, Barnes, a Union member who paid the unlawfully increased dues, filed suit seeking injunctive relief, an accounting, and a refund. By pre-trial order, Judge Ward directed that a retroactive ratification vote be taken on each of the challenged increases. The court limited the voting on each of the challenged increases to workers who were Union members on the dates that the increases took effect, including members who had since retired. These voting classes approved all of the dues increases, each by slightly less than a two-to-one margin. The court then entered an order dismissing Barnes' complaint and Barnes filed this appeal.
 
 
 4
 Barnes claims that the votes taken at the district court's direction could not retroactively cure the defects in the illegal dues increases and that the district court's order improperly denied some present Union members the right to vote.
 
 DISCUSSION
 I. The Retroactive Vote
 
 5
 Barnes first claims that a membership vote approving dues increases cannot be applied retroactively. He argues that if dues increase were improperly implemented, a subsequent, properly conducted ratification vote can apply prospectively only. To support his position, Barnes cites several cases, including Landry v. Sabine Independent Seamen's Association, 623 F.2d 347, 350 (5th Cir. 1980); Local No. 2, International Brotherhood of Telephone Workers v. International Brotherhood of Telephone Workers, 362 F.2d 891 (1st Cir.), cert. denied, 385 U.S. 947, 87 S.Ct. 321, 17 L.Ed.2d 226 (1966); White v. Local 942, Laborers' International Union, 90 F.R.D. 368, 373 (D.Alaska 1981); Gates v. Dalton, 441 F.Supp. 760, 764-65 (E.D.N.Y.1977) (Neaher, J.); Peck v. Associated Food Distributors, 237 F.Supp. 113, 115 (D.Mass.1965).
 
 
 6
 We find Barnes' argument unpersuasive. Each of the cases he cites is distinguishable on the important ground that the ratification vote challenged was initiated by the union without judicial sanction. In this case, the district court, pursuant to section 102 of the LMRDA, 29 U.S.C. § 412, ordered the ratification vote as a remedy for an LMRDA violation. Section 102 provides in pertinent part:
 
 
 7
 Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate.
 
 
 8
 In construing section 102, the Supreme Court has said:
 
 
 9
 (Section) 102 was premised upon the fact that Title I litigation necessarily demands that remedies "be tailored to fit facts and circumstances admitting almost infinite variety," and § 102 was therefore cast as a broad mandate to the courts to fashion "appropriate" relief. Indeed, any attempt on the part of Congress to spell out all of the remedies available under § 102 would create the "danger that those (remedies) not listed might be proscribed with the result that the courts would be fettered in their errors to 'grant relief according to the necessities of the case.' " Gartner v. Soloner, 384 F.2d 348, 353 (CA3 1967).
 
 
 10
 Hall v. Cole, 412 U.S. 1, 10-11, 93 S.Ct. 1943, 1949, 36 L.Ed.2d 702 (1973) (footnote omitted).
 
 
 11
 In this case, the district court was faced with a suit seeking a refund of dues unlawfully collected over a period of several years. Appellant did not file suit until more than seven years after the Union's first LMRDA violation. The court was careful to ensure that the individuals voting on the retroactive approval of each dues increase were, to the extent possible, the same as those who could have voted when the increases were first implemented. Given the small size of the Union and the amount of money involved, the district court could properly have concluded that ordering a refund of all unlawfully collected dues would be as disadvantageous to the membership as to the Union officials. We believe that the remedy was fair, reasonable and "appropriate" within the meaning of section 102 of the LMRDA.
 
 II. The Right to Vote
 
 12
 Barnes also contends that even if a retroactive ratification vote can, in some circumstances, be proper, the district court in this case violated the LMRDA by disenfranchising some present Union members. Barnes relies upon the language of section 101(a)(3)(A) of the LMRDA, 29 U.S.C. § 411(a)(3)(A), which provides that union dues shall not be increased except by a majority vote of the "members in good standing." Because the district court limited the class of voters for each of the ratification votes to those who were union members when the unlawful dues increases were originally implemented, Barnes argues that some present "members in good standing" were improperly denied their right to vote.
 
 
 13
 Once again, we reject Barnes' position. The issue is whether, given the Union's LMRDA violations, the remedy ordered was within the district court's authority. Section 101(a)(3)(A) merely sets forth the procedure a union local must follow to increase dues. It does not limit the district court's authority to design an appropriate remedy for an LMRDA violation. See Section I, supra.
 
 
 14
 We find no error in the district court's exclusion of some present Union members from the voting classes in this case. It was not unreasonable to disallow voting by present Union members who were not members at the time the dues increases took effect.
 
 
 15
 In sum we find that on the facts of this case the retroactive ratification votes and the designation of voting classes ordered by the district court were fair, reasonable and "appropriate" under section 102 of the LMRDA.
 
 
 16
 Affirmed.